**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carlo Scott BAGLEY,
Defendant-Appellant.**

**No. 84–3063.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1985.

Decided July 9, 1985.

Amended Sept. 26, 1985.

---

William W. Youngman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Steven Wax, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Before GOODWIN, SKOPIL and WIGGINS, Circuit Judges.

## AMENDED OPINION

WIGGINS, Circuit Judge:

Appellant Carlo Scott Bagley was convicted after a jury trial of bank robbery, in violation of 18 U.S.C. § 2113(a). He appeals his conviction and urges reversal on the basis of several alleged errors in the pretrial proceedings and in the trial itself. We reject his contentions and affirm his conviction.

## FACTS

On October 31, 1983, at approximately 12:45 p.m., the Peninsula Branch of the First Interstate Bank of Oregon was robbed by a lone black male who was wearing a cap, reddish-pink sunglasses, and a dark jacket. The robber obtained $500 in cash from a teller which included five twenty dollar ($20) bait bills.

The bank manager observed the robbery and followed the robber out of the bank. Although she lost sight of the robber momentarily, she heard a car start and watched it turn east on Willamette Boulevard. The car she observed was a large, gold colored American made automobile. She believed it was the getaway car.

The teller and manager promptly reported the robbery to the police and provided a description of the robber and the getaway car. This information was transmitted over the police radio to patrol cars in the vicinity. The transmission was received by Officers Stolley and Frater who were driving separate cars in the area, as well as by FBI agents who were investigating prior bank robberies.

A few minutes after the robbery, Officer Stolley observed a car matching the description of the getaway car. Officer Stolley followed the car for approximately half a mile and then pulled up alongside the suspected getaway car. He observed that the only occupant was the driver, a black male who resembled the description given of the bank robber. At this time the two cars were on Greeley Street.

At about the same time, Officer Frater was driving in the opposite direction on Greeley Street and he observed a large gold, Buick automobile being followed by Officer Stolley. As he drove by the Buick, Officer Frater saw the driver.

After both police cars had passed the Buick, the driver immediately parked the car on Greeley Street and departed on foot between two houses. Officers Stolley and Frater promptly returned to the scene of the parked Buick. Being uncertain of the involvement of the driver in the recent

bank robbery, the officers decided not to pursue him.

The Buick was lawfully parked on Greeley Street. The car was locked and no key was in the ignition. A registration check made at the scene revealed that the Buick was registered to Marjorie and Anthony Akers.

The bank manager was brought to the scene of the parked Buick. She identified it as the getaway car. Visible on the front seat of the Buick were sunglasses similar to those worn by the robber and a pair of gloves.

After the manager had identified the Buick as the getaway car, Police Officer Ault made a forced entry into the car. Officer Ault intended to remove the sunglasses and gloves. Once inside the car, however, Officer Ault decided to leave these items in place. He conducted no further search of the car. Sometime after 1:15 p.m., Officer Ault ordered the car towed to a storage lot. The car was removed from Greeley Street by 1:30 p.m.

While the above described activities were taking place, the FBI was also investigating the bank robbery. FBI agents focused their attention upon Bagley because he was a suspect in two earlier robberies. A team of FBI agents went immediately to the Bagley residence and began surveillance. The Bagley residence was approximately two miles from the site of the parked Buick. FBI Agent Snow went first to the Bagley residence and then to the location of the parked Buick. He took with him two photographic arrays.

The FBI agents at the Bagley residence observed Bagley arrive between 1:15 p.m. and 1:20 p.m. as a passenger in a car driven by Chris Pennington. The agents watched Bagley enter his house.

In the meantime Agent Snow had arrived at the site of the parked Buick. Agent Snow displayed the photographic arrays to the bank manager and to Officers Stolley

and Frater. The bank manager identified Bagley as the robber. The officers selected Bagley's picture as the driver of the Buick.

The agents at the Bagley residence saw Bagley exit the house at approximately 1:30 p.m. As Bagley was about to enter a car driven by Pennington, the agents detained Bagley and questioned him. The agents then proceeded to handcuff him and transport him to the bank in their car.

At the bank, the teller was asked if she recognized Bagley. She indicated, with some hesitation, that she thought Bagley was the bank robber.

Three days later, the Buick was searched at the police storage lot pursuant to a search warrant. The search uncovered a pair of reddish-pink sunglasses, a pair of gloves, several documents with Bagley's fingerprints, and $500 in cash, including the five twenty dollar ($20) bait bills.

### I.

### ALLEGED PRETRIAL ERRORS

1. *Denial of motion in limine to preclude impeachment of Bagley with prior bank robbery convictions.*

Prior to trial, Bagley filed a motion *in limine* seeking to bar the prosecution from impeaching his credibility by introducing evidence of his prior convictions.[1] Bagley had previously been convicted of four felonies, two for robbery and two for forgery. The district court denied his motion and Bagley did not testify at trial. On appeal, he concedes the admissibility of his forgery convictions, but he challenges the district court's ruling regarding his prior robbery convictions.

In *United States v. Cook*, 608 F.2d 1175 (9th Cir.1979) (en banc), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), we held that a defendant may preserve the right to challenge a district court's ruling refusing to prohibit impeach-

---

1. Bagley renewed his motion to bar the introduction of his prior robbery convictions for impeachment purposes at the conclusion of the prosecution's case. The district court again denied the motion.

ment by the introduction of prior convictions even if the defendant does not testify. *Id.* at 1183–86. In order to preserve this issue for appellate review a defendant must "establish on the record that [he or she] will in fact take the stand and testify if the challenged prior convictions are excluded and sufficiently outline the nature of his or her testimony." *Id.* at 1186. Following this procedure Bagley properly preserved his right to appellate review of the district court's ruling on his motion under Fed.R.Evid. 609(a)(1). Bagley offered to testify that he purchased the getaway car but sold it prior to the robbery. He would also deny any involvement in the robbery and explain his whereabouts at the time of the robbery.

Shortly before oral argument of this appeal, the United States Supreme Court decided *Luce v. United States*, —— U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In *Luce,* the Supreme Court held that in order to preserve the claim of improper impeachment with a prior felony conviction, the defendant must testify at trial. In so holding, the Court rejected the procedure adopted by us in *Cook* and applicable at the time of Bagley's trial.

Were we to apply *Luce* retroactively, Bagley's claim of error based on the district court denial of his motion *in limine* would fail because Bagley did not testify at trial. We find it unnecessary to determine whether *Luce* should be given retroactive application in this case. Bagley's claim of error under Rule 609 must fail because he has not demonstrated that a substantial right was prejudiced.

■ As is clear from its text, Fed.R. Evid. 609(a)(1) requires a weighing of the probative value of a prior conviction against the prejudicial effect to the defendant of that evidence. The prosecution bears the burden of establishing that the probative value of admitting a prior conviction outweighs its prejudicial effect. *United States v. Hendershot,* 614 F.2d 648, 653 (9th Cir.1980). Factors a district court should consider in reaching the appropriate balance are: (1) the impeachment value of

the prior crime; (2) the temporal relationship between the conviction and the subsequent history of the defendant; (3) the similarity between the prior offense and the offense charged; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Cook,* 608 F.2d at 1185, n. 8.

■ We review a district court's ruling on a motion under Rule 609(a)(1) for abuse of discretion. *See United States v. Mehrmanesh,* 682 F.2d 1303, 1309 (9th Cir. 1982). But, even if we conclude that the district court's ruling is erroneous, reversal is required only if a defendant demonstrates that a substantial right has been prejudiced. *See United States v. Portillo,* 699 F.2d 461, 464–65 (9th Cir.1982). A careful review of the record before us compels the conclusion that the district court abused its discretion in finding that the government met its burden of demonstrating that the probative value of Bagley's prior robbery convictions outweighed their prejudicial effect.

■ The purpose of impeachment is to challenge the credibility of a witness. *See Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). Proper impeachment is not, in itself, evidence of guilt or innocence; it merely casts a doubt on other evidence going directly to those issues which the trier of fact should consider. Consistent with this purpose, prior felony convictions which do not in themselves implicate the veracity of a witness may have little impact on credibility. For example, the question of the truth or falsity of a witness's statement generally is not advanced in any material way by a showing of his prior conviction of the crime of burglary or theft, unless issues of credibility are otherwise directly involved. *See United States v. Glenn,* 667 F.2d 1269, 1272–73 (9th Cir.1982)

In *Cook,* we upheld a district court's ruling which would have allowed into evidence the defendant's prior robbery convictions at his trial for bank robbery because

the district court had reason to believe that the defendant would take the stand and misrepresent his character to the jury. 608 F.2d at 1187. In those circumstances, we held that the defendant's prior criminal record would "give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." *Id.* at 1187. *See also United States v. Mehrmanesh,* 682 F.2d at 1309 (in prosecution for drug offense court upheld ruling allowing introduction of prior narcotics conviction because defendant intended to take the stand and deny any involvement in narcotics trafficking).

In the case before us, however, the record is devoid of any evidence that Bagley intended to misrepresent his character or to testify falsely as to his prior criminal record. Thus, the impeachment value of Bagley's prior robbery convictions was quite low yet its prejudicial impact would be overwhelming.

To allow evidence of a prior conviction of the very crime for which a defendant is on trial may be devastating in its potential impact on a jury. As we recognized in *United States v. Field,* 625 F.2d 862, 872 (9th Cir.1980), where, as here, the prior conviction is sufficiently similar to the crime charged, there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again. Such a risk was clearly present in this case.

Moreover, the government's need for the robbery convictions for impeachment purposes was nil. Most certainly, the government would have impeached Bagley's credibility by the introduction of his two forgery convictions. Thus, the only purpose served by the robbery convictions would be to plant in the minds of the jury the spectre that Bagley did it before and he did it again.

In these circumstances, we are convinced that the district court abused its discretion in denying Bagley's motion *in limine.* Nonetheless, because Bagley has failed to demonstrate that a substantial right has been prejudiced, we hold that the error was harmless. *See United States v. Portillo,* 699 F.2d at 464–65.

To meet his burden that a substantial right was affected by the district court's erroneous ruling, Bagley must establish (1) that he would have testified but for the adverse ruling; (2) the substance of his testimony; and (3) that his testimony would more probably than not have altered the jury verdict. *See id.*

Thus, although Bagley has met the first two prongs of this test, he has failed to convince us that his wholly uncorroborated testimony would more probably than not have altered the jury verdict.

Bagley's proffered testimony was that he sold the car prior to the robbery and was jogging when the robbery occurred. However, at trial, Bagley did not introduce any evidence to corroborate his alibi. Bagley did not call the registered owners of the Buick as defense witnesses nor did he introduce any other evidence to substantiate his claim that he sold the car prior to the robbery. Bagley also failed to call the person who drove him to his home shortly after the robbery to bolster his alibi.

Furthermore had Bagley taken the stand, even in the absence of the two prior robbery convictions, his testimony would have properly been impeached by *two* recent prior forgery convictions. In addition, his wholly uncorroborated alibi testimony would have been tested against the weight of the identification testimony of four prosecution witnesses and the evidence seized from the Buick.

When viewing such glaring weaknesses in Bagley's proffered alibi testimony, coupled with his impeachment by the introduction of his two prior forgery convictions, and the weight of the identification testimony offered against him, it is highly unlikely that the jury would have found Bagley credible. *Cf. United States v. Glenn,* 667 F.2d at 1273–74. In light of this overwhelming evidence of guilt, we are convinced that the district court's erroneous

489

ruling on Bagley's Rule 609 motion was more probably than not harmless.[2]

## II.

## MOTION TO SUPPRESS

### 1. Denial of motion to suppress.

Sunglasses, gloves, stolen money, and Bagley's fingerprints were found upon a search of the Buick conducted pursuant to a warrant three days after the automobile was impounded in a police storage lot. Bagley does not contest the sufficiency of the affidavit in support of the search warrant, rather he contends that an unconstitutional seizure of the automobile occurred when it was towed because the seizure was effectuated without a warrant and in the absence of exigent circumstances.[3] Accordingly, Bagley asserts that the unconstitutional seizure tainted the subsequent search and therefore the district court should have suppressed the evidence found in the automobile.

We review the question of the lawfulness of the automobile seizure as a mixed question of law and fact to which a *de novo* standard of review applies. *See United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Before turning to the merits of Bagley's fourth amendment claim, we first address the government's contention that Bagley does not have a legitimate expectation of privacy in the automobile. This contention, raised for the first time on appeal, stems from Bagley's proffered alibi defense.

In his offer of proof in support of his motion *in limine* and through defense counsel at opening argument, Bagley asserted that he sold the automobile prior to the robbery and was not in possession of it on the day of the robbery. In light of these assertions, the government now argues that Bagley has no legitimate expectation of privacy in the automobile. At trial, however, the government asserted, and convinced the jury, that Bagley was the driver of the automobile on the day of the robbery. We reject the government's argument that Bagley's trial strategy vitiates his expectation of privacy in the automobile.

There exists respectable authority to support a determination that the government has waived its right to challenge Bagley's expectation of privacy for the first time on appeal. *See Steagald v. United States*, 451 U.S. 204, 209–11, 101 S.Ct. 1642, 1646–47, 68 L.Ed.2d 38 (1981). We may also conclude that the government may not argue the facts both ways in order to defeat an expectation of privacy. *See United States v. Isaacs*, 708 F.2d 1365, 1367–68 (9th Cir.1984). However, we prefer to decide the expectation of privacy issue before us upon a defendant's right to raise constitutional errors on appeal which are consistent with the jury's factual determinations during the trial. *See United States v. Ross*, 655 F.2d 1159, 1165–66 (D.C.Cir.1981) (en banc), *rev'd on other grounds*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

In this case, the government's claim that Bagley lacked a legitimate expectation of privacy is based upon Bagley's offer of proof. A mere offer of proof by the defendant that he is not the owner or possessor of a car does not establish the fact of ownership or possession. Here, the jury implicitly found that Bagley was in possession of the getaway car on the day of the robbery. Thus, we hold that Bagley has a legitimate expectation of privacy in the car. We, therefore, turn to the merits of Bagley's challenge to the seizure of the automobile.

---

**2.** We recognize that in *Luce,* the Supreme Court stated that "[an] appellate court [cannot] logically term 'harmless' an error that presumptively kept the defendant from testifying." 105 S.Ct. at 464. For the above stated reasons, we are convinced that in this case we may logically conclude that the error was harmless.

**3.** In the district court proceedings, Bagley challenged the lawfulness of Officer Ault's entry into the Buick. Bagley does not renew this claim on appeal and thus we deem it waived.

The lawfulness of the automobile seizure was extensively briefed below and made the subject of a well-considered order by the district court. The district court concluded that our holding in *United States v. Spetz*, 721 F.2d 1457 (9th Cir.1983), governed the seizure issue present in this case. The district court correctly interpreted *Spetz*, *id.* at 1470–72, to require probable cause to believe the automobile contains contraband or evidence of a crime, *and* a stop of an automobile in transit *or* exigent circumstances which make it impracticable to secure a warrant, to justify the warrantless seizure of an vehicle under the automobile exception.

Upon examination of the evidence, the district court found the police had probable cause to believe that the automobile contained evidence of the bank robbery. The district court further concluded that the functional equivalent of an "in transit" stop occurred because Officer Stolley was tailing the automobile when Bagley parked it. As an alternative to its "in transit" holding, the district court found that exigent circumstances justified the warrantless seizure of the automobile because the police had reason to believe that Bagley or the registered owner's might remove the car before a warrant could be secured.

Bagley challenges the district court's conclusions that the functional equivalent of an "in transit" vehicle stop occurred and that exigent circumstances justified the seizure.

We begin our analysis of the issue by acknowledging that towing the automobile to the police lot constituted a seizure within the meaning of the fourth amendment. *See Cardwell v. Lewis*, 417 U.S. 583, 592–96, 94 S.Ct. 2464, 2470–72, 41 L.Ed.2d 325 (1973) (plurality). A search or a seizure effectuated without a warrant issued upon a probable cause is "per se unreasonable under the fourth amendment—subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *See also United States v. Place*,

462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971) (plurality). One such exception is the "automobile exception" first articulated by the Supreme Court in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Since its decision in *Carroll*, *id.*, the Supreme Court has addressed the parameters of the automobile exception in numerous cases, including *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325, which involved review of a state prisoner's habeas corpus petition. In *Cardwell*, a majority of the Court upheld the warrantless seizure of an automobile lawfully parked in a public place. *Id.* The plurality upheld the warrantless seizure on the grounds that the police had probable cause to believe that the car was evidence of a crime and that prompt action was necessary because members of the defendant's family might remove the car. *Id.* at 592–96, 94 S.Ct. at 2470–72. The concurrence found it unnecessary to reach the merits of the defendant's fourth amendment claim on the ground that the defendant had a full and fair opportunity to litigate the issue in the state courts. *Id.* at 596, 94 S.Ct. at 2472. (Powell, J., concurring).

In *United States v. Spetz*, we declined to extract from the plurality's holding in *Cardwell* any general rule with regard to the applicability of the automobile exception to searches or seizures of cars lawfully parked in a public place. 721 F.2d at 1472. We expressly stated that before abandoning the rule set forth in *United States v. Connolly*, 479 F.2d 930, 935 (9th Cir.), *cert. dismissed*, 414 U.S. 897, 94 S.Ct. 248, 38 L.Ed.2d 139 (1973), wherein we required a showing of both probable cause and exigent circumstances for a warrantless search and seizure of an automobile parked on a public street to be deemed lawful, "we would require a far clearer directive from the Supreme Court." *United States v. Spetz*, 721 F.2d at 1472. We now have that directive.

Emphasizing the inherent mobility of vehicles and the reduced expectation of privacy accorded to them, the Supreme Court recently upheld the warrantless search of a *lawfully parked,* but fully mobile motor home under the automobile exception. *California v. Carney,* —— U.S. ——, 105 S.Ct. 2066, 2068–71, 85 L.Ed.2d 406 (1985). In *California v. Carney,* the Court makes clear that under the automobile exception, probable cause *alone* suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable. *Id.* Specifically, the Court stated, "the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches [of vehicles] without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *Id.* at 2070.

■ It follows from the Court's opinion in *California v. Carney,* that if the existence of probable cause alone justifies the warrantless search of a vehicle parked in a public place, certainly a warrantless seizure of such a vehicle, based only on probable cause, also falls within the automobile exception. In light of the Court's holding in *California v. Carney,* we must abandon our interpretation of the automobile exception set forth in *United States v. Spetz,* 721 F.2d at 1472, and *United States v. Connolly,* 479 F.2d at 934–35. We now hold that the existence of probable cause alone justifies a warrantless search or seizure of a vehicle lawfully parked in a public place. In the present case, we need only concern ourselves with the propriety of a warrantless seizure of an automobile parked on a public street.

■ Here, the police officers undoubtedly had probable cause to associate the Buick with criminal activity. Within minutes after the robbery, an eyewitness to the crime identified the car as the getaway vehicle. Sunglasses similar to those worn by the robber were visible on the front seat of the car. In these circumstances, the seizure of the Buick comported with the fourth amendment.

Even if we apply the rule set forth in *United States v. Spetz,* 721 F.2d at 1472, to this case, we are convinced that, along with probable cause, exigencies also existed which necessitated prompt removal of the automobile from the public street.

Contrary to Bagley's assertion, the police officers clearly had more than a generalized fear that someone might attempt to move the Buick. The registered owners, Bagley's friend, or Bagley himself might have attempted to move the automobile.[4] *See United States v. Connolly,* 479 F.2d at 935. In these circumstances, the exigent circumstances prong of the automobile exception rule set forth in *United States v. Spetz* was satisfied. *See id.* 721 F.2d at 1472.

■ Finally, even if we were to find the seizure of the automobile unlawful, suppression of the items seized from the car would be inappropriate. The items were secured during a search conducted pursuant to a warrant. Towing the automobile to the police storage lot for safekeeping in no way contributed to the subsequent search. The search warrant was based on information wholly independent of the automobile seizure. The exclusionary rule is therefore inapplicable to the items secured from the automobile. *See Segura v. United States,* —— U.S. ——, 104 S.Ct. 3380, 3386–89, 82 L.Ed.2d 599 (1984).

In these circumstances, we are satisfied that the district court properly denied Bagley's motion to suppress the evidence secured from the automobile.

### III.

### ALLEGED ERRORS AT TRIAL

*1. Identification Testimony.*

At trial, the district court allowed into evidence the identification testimony of the

---

**4.** The record clearly reflects that the Buick was ordered towed before Bagley was taken into custody. Although the Bagley residence was under surveillance from the front of the house, Bagley could have exited through the rear door or windows.

bank teller, the bank manager, and Officer Frater. Bagley contends that this amounted to denial of due process of law because their identification testimony was the product of impermissibly suggestive pretrial identification procedures. Specifically, Bagley challenges the one-on-one show-up at the bank and the photographic display at the scene of the parked Buick. He claims that these procedures were impermissibly suggestive and thus tainted both the out-of-court and in-court identifications of the teller, the manager, and Officer Frater.[5]

■■■■ Our review of the constitutionality of the pretrial identification procedures is *de novo*. *United States v. Love*, 746 F.2d 477, 478 (9th Cir.1984). Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law. *United States v. Love*, 746 F.2d at 478. To determine whether a challenged identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification, we must examine the totality of the surrounding circumstances. *See Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) (photographic array); *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967) (one-on-one confrontation); *United States v. Love*, 746 F.2d at 478–79 (photographic array); *United States v. Kessler*, 692 F.2d 584, 585 (9th Cir.1982) (one-on-one confrontation).

■■■■ If we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends. *See United States v. Davenport*, 753 F.2d 1460, 1463 and n. 2 (9th Cir.1985); *United States v. Love*, 746 F.2d at 478. Should we find a pretrial procedure impermissibly suggestive, automatic exclusion of identification testimony is not required. *See Manson v. Brathwaite*, 432 U.S. 98, 113–14, 97

S.Ct. 2243, 2252–53, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). If under the totality of the circumstances the identification is sufficiently reliable, identification testimony may properly be allowed into evidence even if the identification was made pursuant to an unnecessarily suggestive procedure. *See id.*

■■■■ To determine whether the identification was sufficiently reliable to warrant admission, we weigh the indicia of reliability against the "corrupting effect of the suggestive identification procedure itself." *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253. Several factors which should be considered in evaluating the reliability of both in-court and out-of-court identifications are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382. *United States v. Field*, 625 F.2d at 866–67. With these principles in mind, we turn first to Bagley's challenge to the identification testimony of the bank teller.

■■■■ Within an hour and a half of the robbery, Bagley was taken into custody. FBI agents promptly transported Bagley to the bank for the teller to observe. The teller saw Bagley seated in a police car, handcuffed and surrounded by law enforcement officials. After getting a full view of Bagley and hearing his voice, the teller stated that she believed Bagley was the robber. Nothing in the record even hints at any verbal encouragement by the officers to identify Bagley as the robber.

In *United States v. Kessler*, 692 F.2d at 584, in circumstances quite similar to those

---

**5.** Prior to trial, Bagley moved to suppress all identification testimony. After an extensive hearing, the district court denied the motion. On appeal, Bagley concedes that the identifica-

tion testimony of Officer Stolley was not tainted by the challenged procedures and thus was properly admitted into evidence.

present in this case, we held that a show-up at the bank shortly after the commission of a robbery, although suggestive, was a legitimate procedure. *Id.* at 585–87. In light of our decision in *Kessler, id,* we hold that the identification procedure employed here was proper.

Having concluded that the one-on-one show-up was a legitimate identification procedure, we need not reach the question whether the teller's identification was reliable under the test enunciated in *Biggers. See United States v. Davenport,* 753 F.2d at 1463 and n. 2; *United States v. Love,* 746 F.2d at 478. In the circumstances of this case, the district court properly admitted the teller's identification testimony.

We turn next to Bagley's challenge to the identification testimony of the bank manager and Officer Frater on the ground that the photographic display at the scene of the parked get-away car was impermissibly suggestive. Bagley's challenge to this procedure is twofold. He claims that both the content of the display and the method of displaying the photographs to the bank manager and Officer Frater were impermissibly suggestive. We first examine Bagley's challenge to the content of the photographic displays.

Photographic procedures which emphasize the focus upon a single individual increase the danger of misidentification. *Simmons v. United States,* 390 U.S. at 382–83, 88 S.Ct. at 970. *United States v. Hanigan,* 681 F.2d 1127, 1133 (9th Cir. 1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983). The repeated showing of the picture of an individual, for example, reinforces the image of the photograph in the mind of the viewer. *Simmons v. United States,* 390 U.S. at 383, 88 S.Ct. at 970. Thus, we have held that "[c]onvictions based on in-court identifications following a pre-trial identification by photograph will be set aside where the photographic identification procedure was so impermissibly suggestive as to give use to a substantial likelihood of misidentification." *United States v. Barrett,* 703 F.2d 1076, 1084 (9th Cir.1983).

The photographic display challenged by Bagley consisted of two groups. One group was comprised of six mug shots of black males. Bagley's mug shot was included in this set. Bagley does not contend that the mug shots in this group were suggestive in any way, rather he contends that the suggestiveness arises because his picture was repeated in the second group of photographs. The second group consisted of two surveillance photographs taken during two previous bank robberies. FBI Agent Snow believed that one of the bank surveillance photographs was a picture of Bagley.

Bagley's contention that the photographic display was unduly suggestive because only his picture was common to both sets of pictures places him in a rather awkward position. If Bagley insists that he is the person in one of the bank surveillance photographs, he is tacitly admitting his involvement in that robbery. We pass this interesting point however, because we have examined both sets of photographs and conclude that the content of photographic display was not impermissibly suggestive. *See United States v. Barrett,* 703 F.2d at 1085 (court independently examined photographic spread to evaluate suggestiveness); *United States v. Portillo,* 633 F.2d 1313, 1324 (9th Cir.1980) *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981) (same); *United States v. Collins,* 559 F.2d 561, 563 (9th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977) (same).

Bagley also claims that the method of showing the photographs was impermissibly suggestive because of the sequence in which the pictures were handed to the bank manager and the joint viewing of the pictures by the bank manager and Officer Frater.

In light of our determination that the content of the photographic display was not suggestive, we conclude that the sequence in which the pictures were shown to the bank manager, without further indicia of suggestiveness, did not render the procedure suggestive in any way. Here, the

record is devoid of any evidence that either Agent Snow or Officer Frater directed the bank manager's attention to any particular photograph. Accordingly, the sequence in which the pictures were shown to the bank manager did not constitute an impermissible procedure. Because the bank manager's identification testimony was not the product of any impermissibly suggestive procedure, the district court properly allowed it into evidence.

Finally, Bagley asserts that the photographic display was impermissibly suggestive because Officer Frater looked over the bank manager's shoulder as she was viewing the pictures and saw her select Bagley's mug shot. Bagley claims that this procedure impermissibly influenced Officer Frater and thus his identification testimony should have been excluded.

■■ A joint confrontation is a disapproved identification procedure. *See United States v. Fields*, 625 F.2d at 870; *United States v. Wilson*, 435 F.2d 403, 405 (D.C.Cir.1970). Clearly, the better procedure is to keep witnesses apart when they view photographic spreads. *United States v. Wilson*, 435 F.2d at 405.

■■ Even if we assume that the joint viewing in this case was unnecessarily suggestive, we are convinced that the district court properly concluded that Officer Frater's testimony was sufficiently reliable to warrant its admission at trial, regardless of whether we apply a *de novo* or clearly erroneous standard of review to the district court's determination of reliability. *See United States v. Jarrad*, 754 F.2d 1451, 1455 and n. 2 (9th Cir.1985) (suggesting, without deciding, that reliability of pretrial identification is subject to *de novo* review on appeal). Here, the indicia of reliability present clearly outweigh any corrupting influences of the pretrial identification procedure.

Officer Frater is an experienced law enforcement official. His attention was keen as it focused on suspected criminal activity. As he drove by Bagley, Officer Frater had an unobstructed view of Bagley's face from a short distance. At the photographic display, Officer Frater promptly identified Bagley as the driver of the Buick. At trial, Officer Frater testified that his identification of Bagley was independent of the bank manager's selection.

In summary, we reject Bagley's due process claim. The district court properly admitted into evidence the identification testimony of the teller, bank manager, and Officer Frater. The weight to be accorded their respective testimony was for the jury to decide. *See United States v. Davenport*, 753 F.2d at 1463; *United States v. Kessler*, 692 F.2d at 587.

### 2. Alleged Prosecutorial Misconduct.

During closing argument the prosecutor made various comments which Bagley contends deprived him of a fair trial. Contrary to Bagley's assertions, the challenged comments were proper.

In reply to defense counsel's argument that the government had not proved its cases, the prosecutor stated:

> The government has not proved its case. You don't know if the car was stolen. You don't know if the car was borrowed. You don't know if the car was sold. You don't—don't you suppose, if anything, if any of those things had, in fact, happened, where would that evidence be, wouldn't it be presented to you—

Bagley argues that this statement by the prosecutor violated his fifth amendment rights because it was an impermissible comment on his failure to testify. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■■ A prosecutor may properly reply to the arguments made by defense counsel, so long as the comment is not manifestly intended to call attention to the defendant's failure to testify, and is not of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *United States v. Soulard*, 730 F.2d 1292 (9th Cir.1984). "A prosecutor may [also] comment upon a defendant's failure to present exculpatory evidence, so long as it is not phrased to call

attention to defendant's own failure to testify." *Id.* (Citing *United States v. Passaro,* 624 F.2d 938, 944 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981)). Viewed under this standard, we do not believe the prosecutor's comments amounted to error at all.

 During his closing argument, defense counsel stated:

> What the government has to prove, that Mr. Bagley was the person using the car on that day. And you don't know what happened with that car. You don't know if it was stolen by someone to use in a bank robbery as you see on TV. You don't know if he sold it. You don't know if he loaned it out. You don't know.

When viewed in context, it is clear that the prosecutor's rebuttal comments were a fair reply to the defense's contention that the government had not ruled out other possible users of the Buick. The prosecutor clearly did not refer to the defendant's failure to testify, nor, under the circumstances of his comment, can we find that the jury would naturally and necessarily have taken this isolated remark as a comment upon the defendant's failure to testify.

Finally, Bagley takes exception to comments made by prosecutor referring to a "conspiracy to get Bagley." Bagley concedes that these comments do not implicate his fifth amendment rights, nonetheless, he contends that these comments were so improper and unduly prejudicial, that a reversal for a new trial is required. Again, the prosecutor's comments must be viewed in context.

During his closing argument, defense counsel sharply challenged the identification of his client by prosecution witnesses. He repeatedly asserted that the identification was constructed and was merely an identification "game" to get Bagley.

In his response, the prosecutor addressed this argument and attempted to dispell any notion that there was an attempt "to get" Bagley. The prosecutor referred to this "game" as an alleged "conspiracy to get Bagley."

A prosecutor's closing arguments must rise to the level of plain error to mandate a reversal for a new trial. *United States v. Falsia,* 724 F.2d 1339, 1342 (9th Cir.1983). On the record before us, we find no such error. Both counsel were zealous in their respective roles. As we view the exchange between counsel, defense counsel opened the door to argument and the prosecutor properly entered. *See id.*

Affirmed.