841 F.2d 1130
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Dang Minh TRAN, Plaintiff-Appellant,
v.
J.C. KEENEY, Superintendent, Oregon State Penitentiary,
Defendant-Appellee.
 No. 86-4423.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 7, 1988.*
Decided March 3, 1988.
 Appeal from the United States District Court for the District of Oregon; Owen M. Panner, Chief Judge, Presiding.
 Before SKOPIL, CYNTHIA HOLCOMB HALL and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner-Appellant Dang Minh Tran appeals from the dismissal by the district court of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. Sec. 2254. We have jurisdiction pursuant to 28 U.S.C. Sec. 2253, and we affirm.
 
 I.
 
 3
 Tran was the driver of an automobile that was stopped by officers of the Portland Police Department on November 6, 1982. Witnesses had placed a car of similar description at the scene of a recent residential robbery. The officers arrested Tran and took him to the station house. After informing Tran of his rights, Detective Gary Gantz interrogated and took a polaroid photograph of him. At this point, Tran had been charged with fraudulent use of a credit card (that charge is irrelevant to this appeal).
 
 
 4
 Gantz then took the polaroid photograph and compiled a photographic throw-down by "[taking] five other photographs of Asian males and put[ting] them in a montage which is a folder consisting of six little windows placing the photos inside."[1] The other five photographs were taken from the police files. Gantz had some difficulty in finding five file photographs of Asian males, so he used as one of them a photograph of Tran that had been taken fourteen months prior to the November 6 arrest. After compiling the throw-down, Detective Gantz showed it to several other detectives who did not see any similarity between the two photographs of Tran. Gantz then took the throw-down and showed it to the victims of four recent robberies. Three of the victims, including Mrs. Sone Thi Vu, identified the polaroid photograph of Tran.
 
 
 5
 Following these identifications, Gantz caused additional charges to be made against Tran. Shortly thereafter, Tran requested an interview with Gantz. Prior to speaking with Tran, Gantz again informed him of his rights. During this second conversation, Tran made incriminating statements that were admitted at trial.
 
 
 6
 On April 22, 1983, Tran was convicted of first degree burglary and first degree robbery of the Vu residence after a jury trial held in the Multnomah County Circuit Court of the State of Oregon. Tran appealed his conviction to the Oregon Court of Appeals, which affirmed without opinion. The Oregon Supreme Court denied review. The petition before us attacks those convictions on two grounds. First, Tran argues that the trial court improperly admitted into evidence the in-court and out-of-court identifications made by Vu. Second, Tran argues that the court improperly refused to permit the jury to determine the voluntariness of the incriminating statements made by Tran during his second interview with Gantz. We take up these arguments in turn.
 
 II.
 
 7
 Tran contends that the admission of the identification violated the due process clause "because two photographs of the appellant appeared side-by-side in the photospread." In addition, Tran argues that the November 9 photograph was the only polaroid used in the throw-down, which also tended to draw attention to him. The Supreme Court has criticized identification procedures in which the witness is shown "pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized," Simmons v. United States, 390 U.S. 377, 383-84 (1968), as have we, United States v. Field, 625 F.2d 862, 867 (9th Cir.1980). But see United States v. Kaylor, 491 F.2d 1127, 1131 (2d Cir.1973) (no indication of impermissible suggestiveness even though two photographs of suspect included in array shown to witnesses), modified on other grounds, 491 F.2d 1133 (2d Cir.) (en banc), vacated on other grounds, 418 U.S. 909 (1974).
 
 
 8
 We review the constitutionality of pretrial identification procedures de novo. United States v. Johnson, 820 F.2d 1065, 1072 (9th Cir.1987); United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986). Pretrial identification procedures may be so suggestive that they taint subsequent in-court identifications. Bagley, 772 F.2d at 492.
 
 
 9
 Under the rulings of the Supreme Court, "reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). We look to the totality of the circumstances in assessing reliability. E.g., id. at 110, 113; Neil v. Biggers, 409 U.S. 188, 199 (1972). The Supreme Court has enunciated five factors courts should consider to determine the reliability of an identification:
 
 
 10
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 
 
 11
 Biggers, 409 U.S. at 199-200.
 
 
 12
 Even if the identification was obtained through a procedure "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," Simmons, 390 U.S. at 384, the use of the identification does not violate due process "if sufficient indicia of reliability are present," United States v. Hanigan, 681 F.2d 1127, 1133 (9th Cir.1982), cert. denied, 459 U.S. 1203 (1983). To determine whether the identification is admissible, we weigh the "corrupting effect of the suggestive identification procedure" against the five factors indicating reliability. E.g., United States v. Monks, 774 F.2d 945, 956 (9th Cir.1985) (citing Manson, 432 U.S. at 114); Bagley, 772 F.2d at 492.
 
 
 13
 Although we may independently examine the photographic throw-down to evaluate its suggestiveness, see, e.g., Bagley, 772 F.2d at 493 (citing numerous cases), we need not do so in this case. The state argues that the two photographs of Tran used in the throw-down "are so astonishingly dissimilar that no element of suggestiveness could have possibly resulted from their simultaneous display." Detective Gantz, however, testified that on November 9 he recognized Tran from his resemblance to the earlier photograph that was later used in the throw-down. Therefore, we conclude that the photographs must have borne some similarity to one another and created some element of suggestiveness when displayed side-by-side in the throw-down.
 
 
 14
 We also conclude that the suggestiveness was unnecessary. Although Gantz had some difficulty in compiling six photographs of Asian males, there is no indication of any emergency or exigent circumstance that made the use of the suggestive identification procedure necessary. See Manson, 432 U.S. at 109 (state acknowledged that suggestive procedure was unnecessary because there was no emergency or exigent circumstance).
 
 
 15
 Nevertheless, we hold that the use of the identification did not violate the due process clause because "sufficient indicia of reliability are present." Vu had a very good opportunity to observe Tran; the two of them had a brief, face-to-face conversation in broad daylight. Although she could not remember identifying Tran's photograph at the suppression hearing held five months after the initial identification, Gantz testified that she "immediately" picked out the photograph of Tran when she first viewed the throw-down. Only five days had elapsed between the crime and the initial identification.
 
 
 16
 Thus, three of the five indicia of reliability are present in this case. The record supports neither the presence nor the absence of the fourth factor, Vu's degree of attention. We disagree with Tran's argument that because she was visibly upset after the robbery, Vu's "degree of attention was limited." Vu's emotional state after the crime is not indicative of her attention prior to the crime. Finally, the fifth factor, the accuracy of Vu's prior description of the criminal, tilts against reliability. Vu was not able to give a detailed description, but was only able to say that the criminals were four young Vietnamese men.
 
 
 17
 When we weigh the corrupting effect of the suggestive throw-down against the indicia of reliability present in this case, we conclude that the in-court and out-of-court identification of Tran were not so unreliable as to violate due process.
 
 III.
 
 18
 Next, Tran contends that the trial court erroneously refused to instruct the jury to consider whether Tran confessed voluntarily.[2] Apparently, Tran was about to make bail on the credit card charge when Gantz caused the robbery charges to be made. Tran then spoke to Gantz in the hope of securing his release because he could not make bail after the additional charges were filed. Tran's argument seems to be that on these facts the jury could have found that his confession was coerced, and that it violated due process not to instruct the jury to consider that issue.
 
 
 19
 The voluntariness of a confession is a legal question that we review de novo. Miller v. Fenton, 474 U.S. 104, 110 (1985).
 
 
 20
 Tran's argument has no merit. He has presented no evidence of deception, improper inducement, threats, or other misconduct by the police. The mere good faith filing of charges that are supported by evidence is neither inherently coercive police conduct nor a means of eliciting information that renders the confession "unlikely to have been the product of a free and rational will," see id. Accordingly, the confession was voluntary within the meaning of the due process clause. Regardless of whether Oregon law requires a judge in such circumstances to instruct the jury to make its own independent determination of voluntariness, the due process clause is satisfied when either the judge or the jury makes this determination. See Lego v. Twomey, 404 U.S. 477, 489 (1972) (rejecting petitioner's contention that even though the trial judge ruled on the voluntariness of his confession, petitioner was still entitled to have the jury decide the claim anew).
 
 IV.
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Tran is of Vietnamese descent
 
 
 [2]
 The state contends that Tran has failed to preserve this issue for habeas review. Tran raised this issue in the suppression hearing, proferred the instruction to the trial court, and objected to the court's refusal to give the instruction. Tran also presented this ground in his state court appeals. Given these facts, we conclude that the issue is properly before us