68 F.3d 462
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael A. WILLIAMS, Defendant-Appellant.
 No. 95-5199.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Oct. 3, 1995.
Decided: Oct. 17, 1995.
 
 Roger Allen Eddleman, EDDLEMAN & SALVADO, Falls Church, Virginia, for Appellant.
 Helen F. Fahey, United States Attorney, Andrew G. McBride, Assistant United States Attorney, Valerie G. Preiss, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Before HALL, MURNAGHAN, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Michael A. Williams appeals his conviction for armed bank robbery, 18 U.S.C. Sec. 2 (1988), 18 U.S.C.A. Sec. 2113(a) (West Supp.1995), and use of a firearm during and in relation to a crime of violence, 18 U.S.C.A. Sec. 924(c) (West Supp.1995). We find no error and therefore affirm.
 
 
 2
 According to eyewitness testimony, on August 23, 1994, Williams and his co-Defendant, Robert Wylie,* entered the Rosslyn branch of Central Fidelity Bank in Arlington, Virginia at approximately 11:45 a.m. While Wylie jumped the teller line and collected money, Williams held the bank employees at gunpoint. Williams wore a white t-shirt, white baseball cap, and sunglasses. Williams ordered the employees down to the floor and counted from ten to five as the men made their escape. Bank surveillance cameras recorded the crime.
 
 
 3
 At trial, branch manager Hawal Ismail Hamad told the jury that she saw Williams in a car parked in front of the bank the morning of the robbery. During the robbery, Williams pointed his gun directly at her from a distance of about fifteen feet and said, "Don't touch, don't move," so that she would not trigger an alarm. Hamad identified Williams as the gunman both by sight and by voice in the courtroom.
 
 
 4
 The trial court denied defense counsel's request for a voice lineup during the prosecution's questioning of Hamad. The court instructed counsel that he could recall Hamad during his defense to conduct a voice lineup. Counsel affirmed that he wanted Hamad available for recall but did not recall the witness.
 
 
 5
 The defense also moved to strike Hamad's in-court identification of Williams, alleging that Hamad had seen post-arrest photographs of Williams prior to trial. The court denied the motion. On redirect, Hamad stated that she had seen only surveillance photographs and had not seen any other photographs of Defendant. Two tellers also identified Williams in court as the gunman.
 
 
 6
 Williams raises several objections to the prosecution's use of in-court identifications. First, he claims that the identifications were tainted by the witnesses' pretrial exposure to photographs of Williams and other evidence in the case. Second, he contends that the district court erred in denying his motion for a lineup prior to the in-court identifications. Finally, he objects to the court's refusal to use a voice lineup for Hamad's voice identification of Williams.
 
 
 7
 This Court employs a two-step analysis when a defendant challenges an identification procedure. First, the defendant "must prove that the identification procedure was impermissibly suggestive." Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir.1994), cert. denied, 63 U.S.L.W. 3259 (U.S.1994). "Once this threshold is crossed, the court then must determine whether identification was nevertheless reliable under the totality of the circumstances." Id. If the procedure was not impermissibly suggestive, the inquiry ends. United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986); see Harker v. Maryland, 800 F.2d 437, 444 (4th Cir.1986).
 
 
 8
 In this case, Defendant failed to offer any evidence tending to show that the procedures used in the in-court identifications were impermissibly suggestive of Defendant's guilt. Hamad testified that she had seen only surveillance photos from the bank. Neither of the two tellers who testified suggested that they had seen pictures of Williams prior to trial. To the extent that actual photos or the crime implicated Williams, the implication was not improper. See United States v. Ervin, 436 F.2d 1331, 1333-34 (5th Cir.1971).
 
 
 9
 Nor did the district court abuse its discretion in denying Williams's requests for an in-court lineup with an inmate from the Alexandria Detention Center and for an in-court voice lineup during the prosecution's case in chief. "The propriety of an in-court eyewitness identification procedure is determined by the trial court in the exercise of its discretion." United States v. Bennett, 675 F.2d 596, 598 (4th Cir.1982), cert. denied, 456 U.S. 1011 (1982). Similarly, this Court has held that a trial court's refusal to subpoena an inmate for an in-court lineup requested by Defendant is reviewed only for abuse of discretion. Id. "Nor does the denial of an in-court lineup amount to a denial of due process." Id.
 
 
 10
 We find no abuse of discretion in requiring the defense to conduct its requested lineups during its case. The court could have flatly denied Williams's request for a lineup without offending due process. Id. Therefore, allowing the defense to conduct a visual or voice lineup during its case was within the court's discretionary authority.
 
 
 11
 Williams asserts that the prosecution withheld from the defense prior to trial a copy of the real-time videotape of the robbery in violation of Brady v. Maryland, 373 U.S. 83 (1963). Moreover, Defendant insists that the court's failure to play the real-time tape for the jury prevented him from challenging the eyewitness accounts of the robbery effectively on cross-examination. He contends that the enhanced videotape misled the jury as to how long the robbers were in the bank and observable to employees.
 
 
 12
 "Suppression of exculpatory evidence by the Government that is material to the outcome of a trial violates due process." United States v. Kelly, 35 F.3d 929, 936 (4th 1994). The Government must also "disclose material evidence affecting the credibility of Government witnesses." Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 678, 682 (1985). Materiality is analyzed based upon the totality of the circumstances. Id.
 
 
 13
 Williams's claim of a Brady violation is meritless. Defense counsel was clearly on notice of the tape's existence prior to trial, having stipulated to its accuracy and admissibility. In addition, counsel was given an explicit opportunity to object to the admissibility of the real-time videotape at trial, but declined. Finally, the real-time videotape was submitted to the jury for review.
 
 
 14
 Williams also avers that the district court abused its discretion in refusing to grant a continuance so that the lead investigator from the FBI, Special Agent Condon, would be available to testify. As further grounds for the continuance, Defendant explained that he needed to locate the distributor of Williams's baseball cap, which matched the cap worn by the gunman, so that he could testify as to the number of similar caps sold in the area. In addition, the Defendant sought to call the manufacturer of the dye packs which exploded on Wylie's clothing as he carried the money from the bank in a leather bag.
 
 
 15
 The denial of a motion for a continuance is reviewed for abuse of discretion. Morris v. Slappy, 461 U.S. 1, 11-12 (1983). A trial court abuses its discretion when it denies a continuance based upon an unreasonable and arbitrary insistence on expeditiousness. Id. The party seeking a continuance for the purpose of securing the attendance of witnesses must identify the witnesses, describe their expected testimony, and prove its relevance and competence. United States v. Clinger, 681 F.2d 221, 223 (4th Cir.), cert. denied, 459 U.S. 912 (1982). The party must also show the likelihood that the witnesses will be available if the continuance is granted and that due diligence was used to secure their presence at the original trial. Id.
 
 
 16
 The district court did not abuse its discretion in this case. Special Agent Condon's affidavits reveal that his testimony would have been consistent with that given at trial by Special Agents Salter and Lawlor. Salter and Lawlor confirmed that they, not Condon, interviewed Williams's friend, Telitha Hobbs, and brother, James Minnix. The defense offers no proof that Condon personally interviewed these witnesses or that his testimony would somehow have differed from that offered by the other agents. Moreover, both Hobbs and Minnix testified at trial about the allegedly coercive tactics of the FBI agents. As the district court noted, Condon's absence could only have helped Defendant's case.
 
 
 17
 Neither of the other witnesses described by Defendant possessed evidence justifying a continuance in this case. Counsel did not even argue at the motion hearing that he needed the cap distributor to testify at trial, did not demonstrate that he had used due diligence to secure his presence for the existing trial date, and did not show that he could not have obtained similar testimony elsewhere. Similarly, Williams did not need to call a representative from the dye manufacturer to establish that dye packs from the bait money would have stained his clothing had they exploded near him. In fact, the prosecution called an expert about the dye packs, whom the defense could have cross-examined on this issue.
 
 
 18
 Williams's last assignment of error contests the sufficiency of the evidence. This Court will uphold a jury verdict if substantial evidence supports it. Glasser v. United States, 315 U.S. 60, 80 (1942). The inquiry on appeal is whether any rational trier of fact could have found Defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial and direct evidence is considered, and the government is entitled to all reasonable inferences which can be drawn from the facts established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). In resolving a substantial evidence appeal, this court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989).
 
 
 19
 We find the evidence more than sufficient to support the jury's verdict. Three eyewitnesses identified Defendant as the robber. Hamad also identified Williams's voice. Agents Salter and Lawlor testified that Minnix and Hobbs identified Williams from bank surveillance photos the day of the robbery. Hobbs admitted making the identification, but claimed she was drunk and "urged" by the agents. Hobbs also testified that Williams had free access to the car used in the robbery. Defendant's thumbprint was found on the car's steering wheel. Finally, Williams's cap and sunglasses were found with Wylie's clothing in Minnix's apartment and were identical to those worn by the gunman. Without question, a reasonable jury could have found Williams guilty beyond a reasonable doubt.
 
 
 20
 We affirm Williams's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Wylie pled guilty to bank robbery