Nathaniel R. Jones, Circuit Judge, dissented and filed opinion.

**AUTOWORLD SPECIALTY CARS, INC.; Tom Joseph, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Secretary of Treasury, Commissioner of Customs, District Director of Customs for the District of Cleveland; Donald Charobee, Special Agent, Defendants-Appellees.**

**No. 85–3850.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1986.

Decided March 31, 1987.

Samuel J. Ferruccio Jr., Samuel J. Ferruccio Jr. Co., LPA, Canton, Ohio, Richard A. Kulics (argued), Bloomfield, Mich., for plaintiffs-appellants.

James C. Lynch, Asst. U.S. Atty., Cleveland, Ohio, Dan A. Polster, Carla D. Moore, Ronald B. Bakeman (argued), Asst. U.S. Attys., for defendants-appellees.

Before ENGEL, JONES and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Tom Joseph (Joseph) appealed from a final order of the district court denying the return of six automobiles seized by agents of the United States Customs Service (Customs).

At all times relevant to this case Joseph was engaged in the business of importing for resale foreign manufactured automobiles. He owned and operated a Canton, Ohio auto dealership known as Tom Joseph Enterprises (Joseph Enterprises) as well as its successor-in-interest Autoworld Specialty Cars, Inc. (Autoworld).

Pursuant to applicable statutes and regulations, an imported foreign automobile may not be sold or offered for sale unless the vehicle complies with safety standards mandated by the United States Department of Transportation (DOT) and air pollution standards set by the United States Environmental Protection Agency (EPA). Foreign automobiles that comply with DOT and EPA standards at the time of entry into the United States may be sold immediately upon release by the Bureau of Customs. If, however, a foreign vehicle does not comply with the agencies' standards at the time of entry, the importer must modify it to comply with those specifications before it is sold or offered for sale. Customs regulations permit an automobile dealer to conditionally import a non-conforming vehicle into the United States upon posting an entry bond and executing Customs form HS–7 (HS–7) attesting his awareness of the non-conforming condition of the vehicle and pledging that the vehicle will not be sold or offered for sale until such time as it has been modified to comply with all DOT and EPA standards and the bond securing the vehicle's conditional entry has been released. 19 C.F.R. § 12.-80(b)(1)(iii).

After an imported motor vehicle is inspected at its port of entry, DOT and EPA notify the importer of the required modifications to bring the vehicle into compliance with DOT and EPA specifications. To attain release of the entry bond, the importer must provide DOT and EPA with a "conformity package" consisting of affidavits describing the modifications performed on the vehicle and photographs of the modified vehicle. DOT and EPA, upon receipt of the "conformity package," advises Customs that the vehicle has been conformed whereupon it authorizes release of the entry bond and closes its file on the vehicle.

In January of 1985, Customs received information that Joseph was selling non-complying imported motor vehicles. Customs assigned Special Agent Donald Charobee (Charobee) to investigate the charges. Between January and May of 1985, Charobee, while working as an undercover agent, visited both Tom Joseph Enterprises and Autoworld. During those visits, Charobee observed several foreign vehicles displayed in the showrooms and was quoted a sale price for each vehicle from a salesperson.

Based upon his comparative examination of DOT records and Ohio title certificate files, Charobee concluded that Joseph, Joseph Enterprises and Autoworld had imported and sold at least 180 foreign vehicles between September of 1983 and May of 1985 and that a number of the imported vehicles had not conformed with DOT standards when they were initially inspected at

their ports of entry. A comparison of the records disclosed that Joseph Enterprises had sold at least 33 of the vehicles prior to obtaining their release from bond. Accordingly, Charobee continued his investigation to determine if Joseph had engaged in a pattern of executing false declaration HS–7 forms with an intent to evade the law by selling vehicles without first bringing them into conformity with DOT and EPA standards.

On May 23, 1985 Charobee applied to the United States District Court for the Northern District of Ohio for a warrant to search Autoworld for "documents" memorializing the purchase and sale of foreign made vehicles by Joseph, Joseph Enterprises, Autoworld or any of their agents. Charobee made no effort to seek prior judicial approval to search for or examine automobiles displayed in the showroom for compliance with DOT and EPA standards even though his sworn affidavit supporting the warrant application specifically stated that Charobee had "reasonable cause to believe ... that records and other evidence in the form of vehicles themselves may be found on the premises to search." Charobee requested the assistance of Senior Customs Inspector Richard Gow (Gow) on the day the search warrant was to be executed. Gow, who was regularly stationed in Newark, New Jersey, testified that he travelled to Canton, Ohio for the express purpose of inspecting vehicles to verify compliance with DOT requirements.

The warrant was executed on May 29, 1985. Charobee and Gow examined the vehicles on the showroom floor and ascertained their vehicle identification numbers (VIN's). Gow thereupon telephoned DOT to determine if its records reflected that those vehicles were secured by an entry bond pursuant to an executed form HS–7. After DOT informed Gow that a number of the vehicles remained secured by entry bonds, Gow and Charobee inspected the bonded vehicles. As a result of their inspections, Charobee and Gow ordered the seizure of five vehicles from the Autoworld showroom floor.[1]

In August of 1985, Charobee returned to Autoworld and seized a Porsche 930 that was parked in a public driveway behind the Autoworld showroom. Prior to seizing the Porsche, Charobee had reviewed a police report, filed by Joseph, stating that the vehicle had been offered for sale to an individual named David Morg (Morg) who had stolen it while on a "test" drive. Morg had previously informed Charobee that the vehicle was not in compliance with DOT requirements at the time it had been offered to him for sale and Charobee's investigation further disclosed that Customs had not released the entry bond securing that vehicle. After inspecting the VIN of the Porsche in the driveway and determining that it was the vehicle that had been offered for sale in a non-conforming condition, Charobee seized the automobile.

Autoworld and Joseph filed this motion for return of property and suppression of evidence pursuant to Fed.R.Crim.P. 41(e). In their motion, Autoworld and Joseph argued that the vehicles had been seized in violation of the Fourth Amendment. The district court concluded that the seizure of the five vehicles on May 29, 1985 was valid under the "plain view" doctrine and that the seizure of the sixth vehicle in August of 1985 was lawful under the automobile exception to the search warrant requirement. Accordingly, the district court upheld the warrantless seizures and refused to return the vehicles to Joseph.

On appeal, Joseph contended that the district court erred in concluding that the seizure of the five foreign automobiles on May 29, 1985 was justified pursuant to the plain view doctrine because the incriminating character of the non-conforming vehicles was not "immediately apparent" to the officers executing the search warrant at the time they first discovered the vehicles. Joseph urged that the officers unlawfully expanded a judicially approved search for "documents" into an exploratory

---

**1.** The officers seized a BMW 323i, a Porsche 928 S, a Porsche 935, a Mercedes Benz 230E and a Mercedes Benz 280SE.

search for non-conforming vehicles. The government responded that the incriminating character of the vehicles was immediately apparent to the officers at the time they entered the showroom and therefore, the seizure was lawful under the plain view doctrine.

In their arguments to this court, both parties have assumed that the officers' actions in examining the vehicles on the showroom floor constituted a warrantless "search" which had to be justified under one of the clearly delineated exceptions to the search warrant requirement. However, existing Supreme Court precedent compels the conclusion that the officers' actions in examining vehicles that were on public display in the Autoworld showroom did not constitute a "search" within the meaning of the Fourth Amendment.

In *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984), the Supreme Court stated that the Fourth Amendment provides protection against both unreasonable "searches" and unreasonable "seizures":

> The first Clause of the Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." This text protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.

In evaluating Joseph's claim that his Fourth Amendment rights were infringed, this court must first consider whether, under the facts of this case, a "search" and/or "seizure" occurred. Assuming that this court concludes that a "search" and/or "seizure" occurred, it must then determine if that "search" and/or "seizure" was "reasonable" within the meaning of the Fourth Amendment.

In *Maryland v. Macon*, 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985), an under-

cover police detective entered an adult bookstore, browsed for several minutes, and purchased two magazines from the defendant store clerk with a marked fifty dollar bill. After determining that the magazines were obscene, the detective returned to the adult bookstore, arrested the defendant and retrieved the fifty dollar bill that had been used to make the purchase. The defendant moved to suppress the magazines and the fifty dollar bill used to make the purchase, arguing that the detective's entry onto the premises of the adult bookstore and his examination of materials offered for sale constituted an unreasonable search and that the detective's purchase of the magazines constituted an unlawful seizure. The Supreme Court determined that the detective's actions in entering the adult bookstore and examining the magazines on public display did not constitute a search within the meaning of the Fourth Amendment:

> A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Here, respondent did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business. *Cf. United States v. Knotts*, 460 U.S. 276, 281–282, 103 S.Ct. 1081, 1085–1086, 75 L.Ed.2d 55 (1983). The mere expectation that the possibly illegal nature of a product will not come to the attention of the authorities whether because a customer will not complain or because undercover officers will not transact business with the store, is not one that society is prepared to recognize as reasonable. *Cf. United States v. Jacobsen, supra,* 466 U.S., at 122, n. 22, 104 S.Ct. at 1661, n. 22, 80 L.Ed.2d 85. The officer's actions in entering the bookstore and examining the wares that were intentionally exposed to all who frequent the place of business did not infringe a legitimate expectation of privacy and hence did not constitute a search within the meaning of the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct.

507, 511, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public, ... is not a subject of Fourth Amendment protection").

105 S.Ct. at 2782. The Court further concluded that the purchase did not constitute a seizure within the meaning of the Fourth Amendment because the defendant had voluntarily transferred his possessory interest in the magazines to the undercover detective upon receipt of the funds. *Id.*

■ In the present case, the record disclosed that the five vehicles that were seized on May 29, 1985 had been prominently displayed to the public on the Autoworld showroom floor. Accordingly, Joseph did not have a reasonable expectation of privacy in Autoworld's showroom area and the officers' conduct in entering the showroom and examining the vehicles did not constitute a "search" within the meaning of the Fourth Amendment. *Macon,* 105 S.Ct. at 2782; *See also, United States v. Brandon,* 599 F.2d 112, 113 (6th Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 72, 62 L.Ed.2d 47 (1979) (Examination of cars in used car lot did not violate owner's privacy expectations).

The record also disclosed that government agents removed five vehicles from the Autoworld showroom floor on May 29, 1985 and thereafter exercised sole and exclusive dominion and control over those vehicles for the purpose of using them as evidence in a criminal prosecution against Joseph. The government's exercise of control over the vehicles constituted a meaningful interference with Joseph's possessory interest and therefore constituted a "seizure" within the meaning of the Fourth Amendment. *See, Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656. In assessing the reasonableness of the seizure, this court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion." *Jacobsen,* 466 U.S. at 125, 104 S.Ct. at 1662 (*quoting United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)).

■ In the present case, the seizure infringed Joseph's purely possessory interest in the vehicles and did not impinge upon any privacy interests. Joseph has charged that the seizure was unreasonable because the officers did not secure a warrant prior to exercising dominion and control over the vehicles. At the time of the seizure, the officers had probable cause to associate the vehicles with Joseph's criminal activity and the vehicles were readily mobile by the turn of an ignition key. As the Supreme Court has noted, "[t]he mobility of automobiles, we have observed, 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.'" *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985) (*quoting South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976)). Accordingly, since the vehicles were inherently mobile and the officers had probable cause to associate them with criminal activity, the warrantless seizure did not violate the Fourth Amendment. *See, e.g., United States v. Bagley,* 772 F.2d 482, 491 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986) (Existence of probable cause alone justifies seizure of vehicle parked in a public place.)

Joseph also urged that the warrantless seizure of the Porsche 930 in August of 1985 violated the Fourth Amendment. However, the record disclosed that the Porsche 930 was parked in a public driveway behind the Autoworld showroom and that the seizure was supported by probable cause. Accordingly, the warrantless seizure was not violative of the Fourth Amendment. *See, California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 2099, 85 L.Ed.2d 406 (1985); *United States v. Bagley,* 772 F.2d 482, 491 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I agree with the majority's conclusion that no "searches" occurred in this case,

but that several "seizures" did take place. However, I object to the majority's cavalier rejection of any requirement that exigent circumstances exist in order to justify the warrantless seizure of an automobile.

The Supreme Court has noted that "the most basic constitutional rule in this area [the Fourth Amendment] is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One of these exceptions to the warrant requirement has been coined the "automobile exception." In *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Supreme Court summarized its seminal decision creating this exception:

> *Carroll* [*v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ] holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.

399 U.S. at 51, 90 S.Ct. at 1981. The Court cautioned that neither *Carroll* nor other decisions required or suggested that warrantless probable cause searches of automobiles were permissible "in every conceivable circumstance." *Id.* at 50, 90 S.Ct. at 1980–81. The Court repeated this caveat in *Coolidge:* "the word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." 403 U.S. at 461–62, 91 S.Ct. at 2035.

In *Coolidge,* police towed an arrested suspect's car from the driveway of his house. They subsequently searched the car and found arguably relevant evidence. The Supreme Court held that the warrantless seizure and search, even though supported by probable cause, were unconstitutional because there were no exigent circumstances.

[T]here is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States* —no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant," *Carroll, supra,* [267 U.S.], at 153 [,45 S.Ct. at 285], and the "automobile exception," despite its label, is simply irrelevant.

403 U.S. at 462, 91 S.Ct. at 2035–36. In contrast, the Supreme Court found the warrantless seizure of a car from a parking lot to be constitutional in *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). However, in *Cardwell* the Court was careful to note that the defendant had asked his attorney to make sure that his wife and family got the car. *Id.* at 595, 94 S.Ct. at 2471–72. Thus, there were exigent circumstances which created a "substantially increased" likelihood that the car would be removed. *Id.*

Altogether, for at least 50 years the Supreme Court found warrantless seizures or searches of automobiles to be constitutional only when both probable cause *and* exigent circumstances existed. But in *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Supreme Court eliminated the exigency requirement in the context of automobile searches. The Court admitted that the original justification for the automobile exception was "ready mobility," but held that the reduced expectation of privacy in an automobile was also a major reason for the automobile exception. *Id.*, 105 S.Ct. at 2069. This diminished expectation of privacy arises from the "pervasive regulation of vehicles capable of traveling on the public highways." *Id.* This low expectation of privacy, in combination with the potential mobility of any motorized vehicle, was held to justify a warrantless car search if based upon probable cause.

Such reasoning does not appear to me to apply to warrantless seizures of vehicles. As the majority notes, the Fourth Amendment's ban of unreasonable searches protects individuals' reasonable expectations of privacy, while the ban of unreasonable seizures protects individuals' *possessory* interests in property. In order to argue that the Supreme Court's decision in *Carney* applies to seizures as well as searches, one must argue that pervasive government regulation of vehicles reduces not only individuals' expectations of privacy but also reduces individuals' possessory interests in property. No such suggestion is made in *Carney,* and I find such an argument untenable. No matter how open to plain view our property is, no matter how stringent the government's supervision of our use of it, our possessory interest remains the same. Therefore, the elimination of an exigency requirement for warrantless car seizures cannot and should not be implied from *Carney's* reasoning with respect to car searches.

Until the Supreme Court explicitly holds that only probable cause is required for a warrantless car seizure, we continue to be bound by Supreme Court decisions such as *Coolidge,* 403 U.S. 443, 91 S.Ct. 2022, and *Cardwell,* 417 U.S. 583, 94 S.Ct. 2464. This precedent requires us to examine whether in this case exigent circumstances rendered it impracticable to obtain a warrant before seizing the cars. With respect to the vehicles on the showroom floor, I find no exigent circumstances. Special Agent Charobee had been visiting the showroom for five months as an undercover agent, presumably without creating suspicion. In order to determine that probable cause existed to seize the vehicles in question, he merely visually inspected the cars for their VIN's and made a phone call to DOT. There is no evidence that such a visual inspection and phone call would have alerted Autoworld employees to any need to remove the cars. The execution of the search warrant for the documents might have aroused suspicion, but no reason is given for executing the search warrant before obtaining a warrant to seize the cars. Therefore, I am unable to ascertain any urgency in the need to seize the cars sitting on the showroom floor.

In regard to the car seized from Autoworld's parking lot, it is even more difficult to determine why no warrant could have been obtained prior to the seizure. Special Agent Charobee had been able to learn from the police report that the car had been offered for sale and that it was still under bond as nonconforming. Thus, even before setting out to find the car, Charobee had probable cause to seize it. Moreover, Autoworld's filing of a police report indicated that defendants did not suspect that they themselves were under investigation. Yet Charobee failed to seek a warrant. No reason is offered for the failure to obtain a warrant first, and I do not discern any exigency in the circumstances surrounding the seizure.

Because I find no justification for the government's failure to obtain warrants for the seizures of defendants' cars, I would *reverse* the judgment of the district court.