1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark K. DARULIS, Defendant-Appellant.
 No. 93-3154.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1993.
 
 Before KENNEDY and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Mark K. Darulis appeals his conviction for knowingly and intentionally manufacturing twenty-two (22) marijuana plants, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(D), imposed following his conditional plea of guilty. On appeal, defendant contends that the District Court erred in denying his motions to suppress evidence obtained as a result of a seizure and search of his van by officers of the National Park Service (NPS). We find no Fourth Amendment violation, and affirm.
 
 I.
 
 2
 The record before the District Court disclosed the following as the basis for the search of defendant's van. On March 24, 1991, a visitor to the Cuyahoga Valley National Recreation Area reported seeing a man with a shovel in a remote area of the park. The visitor told the National Park Service Rangers that when this man saw him, he threw down the shovel and fled on foot. The visitor then led the Rangers to the area of the Park where the encounter took place. Here, the Park Rangers found sixty (60) mounds of dirt evenly spaced in four (4) rows in a swampy area. Each mound was covered with dry black potting soil mixed with white flecks. Thereafter, the Rangers checked the mounds weekly and in June identified the growing plants as marijuana.
 
 
 3
 During the course of the investigation, on May 21, 1991, Ranger Akins found a black nylon backpack containing a plastic gallon jug of water near Quick and Akron-Peninsula Roads. On July 13, 1991, on a path leading to the marijuana site, Rangers Akins and Vasquez encountered a man carrying a black backpack which Akins recognized as the one she had previously seen near the marijuana patch. The man identified himself as "Mark" and told the Rangers that he had found the backpack. He consented to a search of the backpack in which the Rangers discovered a fertilizer-like substance. Nothing further took place during this encounter.
 
 
 4
 The next day, July 14, 1991, Ranger Vasquez checked park files for possible marijuana growing suspects and found the name "Mark Darulis." Vasquez then obtained a seven-year-old photo of Darulis from the Cuyahoga Falls Police Department and identified him as the man he had seen walking in the park the previous day. Vasquez then showed the photograph to Ranger Akins who also identified Darulis as the man she had seen the previous day. On September 6, 1991, the Rangers began daily surveillance of the marijuana patch.
 
 
 5
 On September 23, 1991, Mark Darulis was seen walking on the Akron-Peninsula Road toward the marijuana patch. At approximately 7:40 p.m., Ranger Akins observed him enter the marijuana patch, break off seven (7) mature plants, and stack them under a tree. Ranger Akins then confronted Darulis and yelled for him to "freeze," whereupon Darulis fled. That same night, during the search for defendant, Rangers Vasquez and Dolges observed a blue van parked in the area of the Brandywine Golf Course parking lot (about one-half to one mile away from the marijuana patch). A computer check revealed that the van was registered to Mark Darulis. The Rangers searched for the defendant for approximately two (2) hours and waited for him to return to the van. When he did not return, the Rangers had the van towed to the Ranger Station.
 
 
 6
 The following day, September 24, 1991, National Park Ranger Gregory Cravatas prepared an affidavit for a search warrant for the van. The magistrate judge issued the warrant, authorizing a search of the van for various items, including marijuana, marijuana cultivation tools, fertilizer, customers' names, addresses and phone numbers. The warrant was executed by National Park Rangers at 8:30 p.m. that same evening. The Rangers found and seized one black nylon duffle bag, two shovels, a box of vegetable food, a plastic water container, two bags of potting soil, a bag of vermiculite, two black nylon backpacks, a folding shovel, a spool of monofilament line, road maps, a wallet containing the defendant's driver's license, green leafy material and seeds from the floor of the van and other miscellaneous items.
 
 
 7
 On February 20, 1992, defendant was charged in a two count indictment. Count I alleged that defendant knowingly and intentionally attempted to manufacture approximately sixty (60) marijuana plants, in violation of 18 U.S.C. Secs. 841(a)(1) and (b)(1)(C) and 846. Count II alleged that defendant knowingly and intentionally manufactured twenty-two (22) marijuana plants, in violation of Secs. 841(a)(1) and (b)(1)(D).
 
 
 8
 Defendant filed several motions to suppress the evidence seized from his van. Specifically, on March 24, 1992, defendant filed a Motion to Suppress claiming the agents did not have probable cause to search the vehicle and that the search warrant issued was based upon erroneous information. On April 6, 1992, defendant filed a Supplemental Motion to Suppress alleging that the affidavit in support of the search warrant was incorrect as to the location of defendant's van. On June 19, 1992, defendant filed a second Supplemental Motion to Suppress regarding the items found in a locked box within the van for the reason that an additional warrant for the box was needed. Finally, on June 22, 1992, a Motion to Suppress the Identification of the defendant was filed alleging the identification was unduly suggestive and defendant filed an additional Motion to Suppress claiming the National Park Rangers lacked jurisdiction to "investigate, seize or make affidavit for search warrant." On July 14, 1992, the District Court denied all of the defendant's Motions to Suppress.
 
 
 9
 On October 13, 1992, a jury trial commenced. Prior to the completion of the government's evidence, the defendant entered a conditional guilty plea to Count II of the indictment. Count I was dismissed. Defendant was sentenced to a term of two (2) years probation, with home detention and electronic monitoring for the first six months.
 
 II. Motions to Suppress
 
 10
 Defendant argues that the District Court committed reversible error in failing to suppress the evidence seized from the search of defendant's van. "On review of motions to suppress evidence, findings of fact will be upheld unless clearly erroneous; however, a district court's conclusions of law are reviewed de novo." United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990) (quoting United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988)), cert. denied, 111 S.Ct. 2055 (1991).
 
 A. The Identification of the Defendant
 
 11
 The defendant's first challenge is to the Rangers' (Vasquez and Akins) identification of him through the use of a seven-year-old photograph. Defendant contends that checking the files for possible drug suspects named "Mark," obtaining a photograph as a result of this search, and using only this one photograph to make an identification, was unduly suggestive and therefore in violation of his rights. It is undisputed that the Rangers who made the identification were investigating the growing of marijuana on park property. In obtaining the photograph, the Rangers were merely attempting to identify the individual they had encountered near the marijuana patch in the park. The photograph merely informed them that Mark Darulis was the name of that individual. No action was taken by the Rangers in reliance on the photograph, and defendant was not arrested nor convicted on the basis of the photographic identification. The search warrant for defendant's van was not executed until after the Rangers witnessed the defendant, in person, pulling out the mature marijuana plants from the patch. Thus, identification of the defendant from the photograph was only an investigative procedure to learn the identity of the person initially observed and did not warrant suppression of the evidence seized from his van.
 
 B. Terry Stop
 
 12
 Defendant further contends that the Rangers' initial encounter with him on the path leading to the marijuana patch and their subsequent search of the backpack he was wearing violated his rights under the Fourth Amendment. It is well established that not every encounter between the police and citizens are seizures within the meaning of the Fourth Amendment. United States v. Winfrey, 915 F.2d 212, 216 (6th Cir.1990) (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)), cert. denied, 498 U.S. 1039 (1991). Specifically, "police questioning, by itself, does not result in a fourth amendment violation." Id. A seizure occurs only when a reasonable person, in light of the circumstances surrounding the encounter with law enforcement agents, believes he is not free to leave. Id. (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)). We find that a reasonable person would conclude that defendant was not seized for purposes of the Fourth Amendment when the Rangers merely questioned defendant about the backpack he was carrying and asked his permission to search it. The search did not implicate any Fourth Amendment rights because, as defendant concedes, he consented to it.
 
 C. Probable Cause to Seize the Van
 
 13
 Shovels, vegetable food, a plastic water container, plotting soil, green leafy material and seeds were found upon a search of the defendant's van, conducted pursuant to a search warrant, one day after the van was towed to the Ranger Station. Defendant contests the sufficiency of the affidavit in support of the search warrant and also contends that an unconstitutional seizure of the van occurred when it was towed because the seizure was effectuated without a warrant. Accordingly, defendant asserts that the unconstitutional seizure tainted the subsequent search and thus the District Court should have suppressed the evidence found in the van. This Court reviews the question of the lawfulness of the automobile seizure as a mixed question of law and fact to which a de novo standard of review applies. United States v. Bagley, 772 F.2d 482, 489 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986).
 
 
 14
 First, the Rangers' exercise of control over the van (i.e., the towing) resulted in a meaningful interference with defendant's possessory interest and therefore constituted a "seizure" within the meaning of the Fourth Amendment. Autoworld Specialty Cars, Inc. v. United States, 815 F.2d 385, 389 (6th Cir.1987). See also Bagley, 772 F.2d at 490 (acknowledging that "towing the [defendant's] automobile to the police lot constituted a seizure within the meaning of the fourth amendment"). A search or seizure effectuated without a warrant issued upon probable cause is "per se unreasonable under the Fourth Amendment subject only to a few specific established exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One of the well-established exceptions encompasses searches and seizures of automobiles. Carroll v. United States, 267 U.S. 132 (1925). In California v. Carney, 471 U.S. 386 (1985), the Supreme Court reiterated that exigent circumstances and diminished expectations to privacy are the two primary bases for the automobile exception to the warrant requirement. In Carney, the Court makes clear that under this exception, probable cause alone suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable. See Bagley, 772 F.2d at 491. Several Courts, including this one, have recognized that a logical extension of the Supreme Court's opinion in Carney is that if the existence of probable cause alone justifies the warrantless search of a vehicle parked in a public place, then a warrantless seizure of such a vehicle, based only upon probable cause, also falls within the automobile exception. Autoworld, 815 F.2d at 389; United States v. Cooper, 949 F.2d 737, 747 (5th Cir.1991) ("We believe that probable cause alone also suffices to justify seizing a vehicle on a public street as evidence or instrument of a crime."), cert. denied, 112 S.Ct. 2945 (1992); Bagley, 772 F.2d at 491.
 
 
 15
 In Autoworld, government agents removed five vehicles from the Autoworld showroom for noncompliance with safety and air pollution standards. This Court upheld the warrantless seizure. The Court stated, "since the vehicles were inherently mobile and the officers had probable cause to associate them with criminal activity, the warrantless seizure did not violate the fourth amendment." Autoworld, 815 F.2d at 389. See also Bagley, 772 F.2d at 491 ("We now hold that the existence of probable cause alone justifies a warrantless search or seizure of a vehicle lawfully parked in a public place."). Here, the facts known to the Rangers at the time they towed defendant's van were as follows:
 
 
 16
 1. On July 13, 1991, Rangers encountered Mark Darulis on a path leading to the marijuana patch carrying a backpack containing fertilizer.
 
 
 17
 2. On September 23, 1991, Rangers observed Mark Darulis enter the marijuana patch, break off seven mature marijuana plants and stack them under a tree.
 
 
 18
 3. When Ranger Akins confronted Darulis, he fled.
 
 
 19
 4. Rangers located Darulis' van in the Brandywine Golf Course parking lot (approximately one mile from the marijuana patch).
 
 
 20
 In these circumstances, the Rangers had probable cause to believe the van contained evidence of criminal activity. Accordingly, the seizure comported with the Fourth Amendment.[1]
 
 D. Probable Cause to Issue Search Warrant
 
 21
 Defendant further contends that the search warrant for his van lacked probable cause and was based on erroneous information that invalidated the search. When issuing a warrant, the task of the magistrate judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). On review, this Court must give the magistrate judge's decision great deference, reviewing simply to ensure that the magistrate judge had a "substantial basis for ... conclud[ing] that probable cause existed." Id. at 28-39
 
 
 22
 In support of the request for a search warrant, NPS Ranger Gregory Cravatas swore out an affidavit describing (1) the marijuana patch growing in the field; (2) Rangers Akins and Vasquez' initial encounter with defendant on the path leading to the patch; (3) the Rangers' surveillance of the patch and defendant's actions in pulling out seven marijuana plants; (4) defendant's flight from the patch when confronted by Ranger Akins; and (5) the Rangers' discovery of defendant's van a short distance from the patch. Upon review of the affidavit, we believe the magistrate judge had before him sufficient information to conclude that a fair probability existed that evidence of a crime would be found in the van.
 
 
 23
 Defendant contends, however, that the warrant issued by the magistrate judge was based upon erroneous information and that had correct information been presented, the magistrate judge would have found no probable cause to issue the warrant. Specifically, paragraph 15 of the affidavit states:
 
 
 24
 On September 23 @ 7:50 pm, Rangers Vasquez and Dolges observed a blue dodge van parked on National Park Service property at the corner of Quick and Akron-Peninsula Roads. A computer check indicated the registered owner is Mark Darulis.
 
 
 25
 Joint App. at 103. The affiant, Ranger Cravatas, testified at the suppression hearing that he believed this information to be correct as related to him by the other officers involved in the investigation at the time, and that it was not until some time later that he found out the van was, in fact, parked at the Brandywine Golf Course, about a half mile to a mile down the street from the park.
 
 
 26
 Under the standard set forth by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 171 (1978), a proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product "of deliberate falsehood or of reckless disregard for the truth.... Allegations of negligence or innocent mistake are insufficient." This Court has likewise recognized that:
 
 
 27
 A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.
 
 
 28
 If probable cause exists absent the challenged statements, a defendant is entitled to no more....
 
 
 29
 United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990) (citations omitted). The District Court found that defendant failed to comply with these procedural requirements. The Court further found that even absent the challenged statement, probable cause still existed. These findings are not clearly erroneous.
 
 E. Search of the Locked Box in the Van
 
 30
 The defendant next contends that the evidence discovered from his van should be suppressed because the search of the locked box inside the van was not conducted pursuant to a valid warrant. Defendant relies on United States v. Chadwick, 433 U.S. 1 (1977), to support his position. In Chadwick, the Supreme Court rejected, on Fourth Amendment grounds, evidence seized from a double-locked footlocker which had been placed in the trunk of a waiting car. The Court held that there were no exigent circumstances and that the warrantless search of the footlocker deprived defendants of the protection of the Warrant Clause of the Fourth Amendment.
 
 
 31
 The case at issue differs from Chadwick in that the Rangers had a valid warrant authorizing a search of the van for "marijuana, marijuana seeds, marijuana cultivation tools, documents reflecting purchases of items which are used to grow marijuana, check books, savings books, and other financial documents ... reflecting deposits of marijuana sales, and customer names, addresses and phone numbers." Joint App. at 61. Pursuant to the principle that the scope of a search is generally defined by its expressed object, Florida v. Jimeno, 111 S.Ct. 1801 (1991), the Rangers lawfully searched the locked box. In a case involving police officers' search of closed luggage found in the Bronco that they had a warrant to search, the Ninth Circuit reasoned that:
 
 
 32
 It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein ... if those effects might contain the items described in the warrant. Because the warrant authorized the search of the Bronco, the agents could lawfully search any luggage found therein that might contain the contraband listed in the warrant.
 
 
 33
 United States v. Chadwick ... is inapposite. That case involved the search of a locked footlocker in the trunk of a car when the search of the car itself was without a warrant.
 
 
 34
 United States v. Grandstaff, 813 F.2d 1353, 1358-59 (9th Cir.), cert. denied, 484 U.S. 837 (1987). See also, United States v. Kralik, 611 F.2d 343 (10th Cir.1979) (finding that officers not required to obtain an additional warrant for search of suitcase found in trunk of automobile where officers already had a warrant authorizing search of the automobile for a sawed-off shotgun concealed therein), cert. denied, 445 U.S. 953 (1980). Therefore, as the District Court found, because the items listed in the search warrant "could have been found in the box, the rangers were authorized to search the box without obtaining an additional search warrant." Joint App. at 65.
 
 
 35
 This finding is consistent with Supreme Court case law regarding warrantless searches of automobiles. Under the "automobile exception" to the warrant requirement, an officer may conduct a warrantless search of every part of a legitimately stopped vehicle, including the trunk and all containers, if there is probable cause to believe it contains contraband. California v. Acevedo, 111 S.Ct. 1982 (1992); United States v. Ross, 456 U.S. 798, 820-21 (1982). Consequently, it follows that what officers are authorized to do without a warrant, they may likewise do with a warrant, especially in light of the courts' desire "to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise would be the case." Massachusetts v. Upton, 466 U.S. 727, 733 (1984).
 
 
 36
 F. Authority of the National Park Service Rangers
 
 
 37
 Defendant's final contention is that the NPS Rangers lacked jurisdiction to conduct the warrantless seizure and subsequent search of his van. As United States Park Rangers, Rangers Akins, Vasquez, Cravatas and Dolges (and all others involved in the investigation), had substantially the same powers and duties as other federal law enforcement officers. United States v. Gibson, 896 F.2d 206, 209 (6th Cir.1990). Specifically, 16 U.S.C. 1a-6(b) authorizes park rangers to (1) carry firearms and make arrests without warrant; (2) execute warrants issued by a court; and (3) "conduct investigations of offenses against the United States committed in that [park] system in the absence of investigation thereof by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of such other agency." While the Rangers' investigative authority is limited to federal offenses occurring within the park system, it is not limited by the statute to park property. United States v. Smith, 713 F.2d 491, 494 (9th Cir.1983). In this case, there was no other investigation by a federal law enforcement agency. Additionally, the District Court found that "[t]he rangers were investigating a [federal] offense which occurred on park property. They had reason to believe that the van contained contraband or evidence of this offense and therefore had the authority to impound the van and secure a search warrant." Joint App. at 66. The search and seizure of defendant's van was within the Rangers' authority under section 1a-6(b)(3).
 
 III.
 
 38
 For the aforementioned reasons, defendants conviction and sentence are AFFIRMED.
 
 
 
 [1]
 In addition to probable cause, exigent circumstances also existed which necessitated prompt removal of the van from the parking lot. As defendant was yet to be apprehended, the Rangers had a legitimate concern that he might attempt to remove the van. Thus, the exigent circumstances prong of the automobile exception is also satisfied